Charles Margett, J.
The ultimate issue to be decided in this action for a declaratory judgment is whether an automobile accident, in which defendant was involved on July 23, 1957, was covered by any policy of liability insurance issued by the plaintiff carrier.
On April 10, 1956 plaintiff entered into a contract of automobile liability insurance with the defendant protecting him against any claims for personal injuries which might arise from the operation of his automobile for a period of one year from said date. The premium for said policy, in the sum of $119.20, was adjusted on a prorata basis in view of defendant’s residence for six months at 185 Erasmus Street, Brooklyn, New York, and for the remaining six months in Sullivan County, New York. This premium was fully paid in the following installments: $30.60 in April, 1956; $19.60 on May 2, 1956; $35 on July 26, 1956, and the same amount on August 2, 1956, or subsequently. The last payment, according to Mr. Engberg, plaintiff’s division supervisor of its accounting department, would have been due on October 10, 1956. He admitted that a cancellation notice, effective on September 13,1956, for the nonpayment of part of the 1956 premium, was mailed on September 1,1956, apparently as the result of an accounting mistake, since his records showed a payment by the defendant on July 26,1956, “ which caused the policy to be reinstated without lapse.”
On April 6, 1957, shortly before the expiration date of the policy referred to above, defendant called at the plaintiff’s Brooklyn office, where he made a written application to renew his policy for another year and paid $30 on account of the premium. Under the heading': “ Special Instructions ” on the form signed by the defendant, there is a notation: “ Send Renewal Policy & Bill — None Received to Date.”
*164 Thereafter, defendant received from the plaintiff an indorsement or supplement page extending the coverage of the initial policy for one year to 12:01 a.m., Standard Time on April 10, 1958. This document contains a statement of coverages and limits of liability together with their several premiums totalling $131.90; the payment of $30 made by defendant on April 6,1957, however, is not reflected; nor is there an installment payment schedule set forth, similar to that contained in the supplement page which accompanied the original policy of insurance.
Defendant testified that he never received any bills for or any schedule of installment payments for the new and increased premium and plaintiff’s principal witness, Mr. Bngberg, conceded that there was no way of ascertaining from plaintiff’s records whether any bill had ever been sent to the defendant. He admitted that the 1957-1958 supplement page or renewal certificate did not contain any schedule of installment payments but insisted that according to the 1956-1957 policy 40% of the premium was payable at renewal time; 30% three months later, and the final 30% within six months of the renewal date; that on April 10, 1957, an installment of $54.65 was due and payable on account of which defendant remitted only $30, leaving an unpaid balance of $24.65.
It is claimed by the plaintiff that on June 10, 1957, a notice of cancellation was mailed to the defendant at his residence in Brooklyn, New York, effective on June 22, 1957, unless the payment of $24.65 is received at any of its offices before that date, in which event the insurance will be continued. Defendant denied receiving this notice or, indeed, that it was ever mailed; that even if mailed, the notice was addressed to a place at which plaintiff knew he could not then be found, since the month of June was within the period of six months during which defendant lived in Ferndale, Sullivan County.
On July 23,1957 defendant was involved in an accident while operating his automobile in Sullivan County, causing personal injuries to a pedestrian. Plaintiff’s investigator interviewed the defendant at his home in upper Ferndale, New York, on the same day. He prepared a report of the accident based upon information supplied by the defendant whom he believed to be plaintiff’s assured. It was mailed the same day to the Motor Vehicle Bureau in Albany, where it was received on July 24, 1957, the day that that Bureau received from the plaintiff a form “ FS-4 ”, dated July 19, 1957, terminating defendant’s Financial Security Certificate of Insurance as of June 22, 1957.
On July 26, 1957 defendant mailed plaintiff a check for $70, dated that day. The envelope in which this check was enclosed *165 was one that had been supplied by plaintiff in prior correspondence. It was postmarked Ferndale, N. Y., July 27, 1957, at 8:00 a.m., and on the back thereof defendant supplied the number of his policy, his name and the address, 185 Erasmus St., Brooklyn, N. Y., as it appears on the supplement page renewing his policy. Although this page had a handwritten notation “ 6 months Brooklyn, 6 months Sullivan County” the Brooklyn address alone was typewritten. That address, incidentally, was the only one that was set forth in defendant’s application for renewal dated April 6, 1957.
On or about August 7, 1957 plaintiff returned defendant’s July 26 payment of premium by its own check for $70.05. Following a personal call at the Brooklyn office of the plaintiff, defendant sent this check back to the plaintiff which deposited it in its own account on August 27, 1957. Plaintiff then sent another check for $70.05 to defendant, dated September 16,1957, which was never cashed. On September 13, 1957 defendant paid to the plaintiff the balance of the premium in the sum of $31.90, which was returned by check dated October 1, 1957 and which likewise was never cashed.
By order dated September 20, 1957 the Bureau of Motor Vehicles revoked the defendant’s registration for lack of proof of financial security as of June 22, 1957. Defendant called immediately at the Brooklyn office of plaintiff for an explanation. On September 21, 1957, plaintiff issued a form ” FS-1 ” Certificate of Insurance to defendant covering “ policy period from 6/22/57 to 4/10/58.” On September 30, 1957 the Bureau of Motor Vehicles, acting upon the foregoing certificate, issued a notice of restoration terminating the revocation order of September 20,1957.
In the meantime, Esther Mandel, who had sustained personal injuries as the result of the July 23rd accident, commenced an action in this court against the defendant by the service of a summons and complaint verified August 9, 1957, which he promptly forwarded to the plaintiff. On September 9, 1957 plaintiff wrote a letter to defendant, signed by a firm of attorneys, notifying him that the action against him was being defended by its said attorneys but that since the amount sought to be recovered was in excess of the policy coverage, for which excess he will be personally responsible, it was his privilege to retain personal counsel at his own expense to co-operate with plaintiff’s attorneys in the defense of the action. Issue in said action was joined by an answer verified by one of the attorneys on September 9, 1957; a bill of particulars was demanded, defendant was examined before trial and the transcript of his *166 testimony was transmitted to him by the attorneys retained by the plaintiff on October 16,1957, for execution.
On October 4, 1957, however, plaintiff’s district service office in Newburgh, New York, notified defendant, by letter addressed to him at his Brooklyn address, copies of which were sent to the Motor Vehicle Bureau and to his attorney in the Mandel action, that plaintiff’s records revealed that the policy issued to defendant was cancelled effective on June 22, 1957, and that since “ this accident happened on July 23, 1957, we had no coverage in effect at time of accident ’ ’; that the “ N. Y. Motor Vehicle Dept.” is being advised accordingly as well as the attorneys who appeared for defendant “to withdraw from defense of this action.”
On November 1, 1957 the Commissioner of Motor Vehicles, by his Financial Security Section, wrote plaintiff a letter, a copy of which was mailed to the defendant, acknowledging receipt of the letter of October 4th and stating as follows:
‘‘ Our records indicate Mr. Altman obtained his 1957 registration 9D 2167 on the 1953 Chevrolet, motor #LAA8898 by presenting an FS-1 issued by your company under policy #43649097 dated 4/10/56 to 4/10/57. We received an FS-4 showing termination of this coverage as of June 22, 1957 and issued a notice of revocation. Subsequently we received an FS-1 issued by the Allstate Insurance Company on September 21, 1957 under the same policy number showing coverage from 6/22/57 to 4/10/58 and signed by Robert B. Peterson. On this certification of coverage, we rescinded the revocation issued against Mr. Altman.
‘ ‘ In view of the FS-1 filed by you subsequent to the termination, it would appear that you had coverage on this car at the time of the accident of July 23, 1957. Will you please let me have your advice.”
On October 21, 1957 the attorneys representing the defendant in the Mandel action moved for leave to withdraw from any further participation in the action. Upon the basis of defendant’s opposing affidavit which was buttressed by photo static copies of much of the documentary proof received in evidence on this trial, the late Mr. Justice Kusuetz denied the motion observing: “ In view of the sharp issue raised by the opposing affidavit as to whether or not the policy of insurance was in force on the day of the accident, the relief sought may not be disposed of summarily.” (Mandel v. Altman, N. Y. L. J., Dec. 10,1957, p. 11, col. 7.)
Plaintiff failed to adduce any satisfactory proof that it billed the defendant for the 1957-1958 premium or any installment *167 thereof, and more particularly the $24.65 for the nonpayment of which its claim of cancellation of the policy is based. Nor did it bring home to the defendant, as it did in the supplement page which accompanied the initial policy, an installment payment schedule. Neither did the plaintiff comply with defendant’s request, contained in his renewal application dated April 6, 1957, to “ Send Renewal Policy and bill.” The “Renewal Policy ”, in the form of a supplement page, was forwarded to him but no bill for all or any part of the premium amounting to $131.90, as compared with $119.20 Avhich defendant paid for his 1956-1957 coverage.
While the plaintiff never complied Avith the defendant’s request of January 7, 1957, when the initial policy was in effect, for a change of address to Ferndale, New York, the defendant in his April 6,1957, application to renew the policy for the year commencing on April 10,1957, furnished only his Brooklyn residence address and made no mention Avhatsoever of his address in Sullivan County. In any event, defendant never furnished the information requested by plaintiff in form U363, which it had sent him in order to complete the requested change of address made in January 1957. The supplement page renewing the policy for 1957-1958 received by the defendant at his Brooklyn address, had stencilled thereon only his Brooklyn address, although there was a handwritten notation: “ 6 months Brooklyn, 6 months Sullivan County ”. Defendant’s address at the latter county, however, was not stated and he adduced no proof whatsoever that upon receipt of this supplement page, or at any time thereafter he requested plaintiff to change his address to Ferndale, N. Y. Indeed, when he mailed the plaintiff the check for $70 from Ferndale several days following the accident on July 23, 1957, he printed in ink on the back of the envelope his return address as follows: “ 185 Erasmus St. Brooklyn, N. Y., N. Y.”
The material clause of the policy with respect to its cancellation by the insurer reads as follows: ‘ ‘ Allstate may cancel this policy by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice shall he sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period.” (Emphasis supplied.)
Section 93-c of article 6-A of the Vehicle and Traffic Law in effect when the events set forth above occurred (Motor Vehicle Financial Security Act; L. 1956, ch. 655, eff. Feb. 1, 1957) reads as follows:
*168 “ Notice of termination. No contract of insurance or renewal thereof for which a certificate of insurance has been filed with the commissioner shall be terminated by cancellation or failure to renew by the insurer' until at least ten days after mailing to the named insured at the address shown on the policy a notice of termination. Time of the effective date and hour of termination stated in the notice shall become the end of the policy period. Every such notice of termination for any cause whatsoever sent to the insured shall include in type of which the face shall not be smaller than twelve point a statement that proof of financial security is required to be maintained continuously throughout the registration period and that failure to maintain such proof of financial security is a misdemeanor.
“ Upon the termination of insurance by cancellation or failure to renew, notice of such cancellation or other termination shall be filed by the insurer with the commissioner not later than thirty days following the effective date of such cancellation or other termination.”
Defendant contends that plaintiff failed to establish by competent proof the due mailing of the notice of cancellation in accordance with the terms of the policy and the statute and the timely filing of said notice with the Commissioner of Motor Vehicles in Albany.
In Gardam Son v. Batterson (198 N. Y. 175, 178) where the question presented was whether a letter was sent by mail at a certain time, the court held that, only in the absence of any evidence as to its being deposited with the Post Office authorities, proof of the existence of a course of business or of office practice is required, according to which the letter naturally would have been so deposited.
In the instant case proof that the envelope containing the notice of cancellation had actually been delivered to a post office on June 10,1957, was established by plaintiff’s Exhibit 5, which consists of a list of names and addresses typed on a sheet of paper, including the defendant’s. This list according to plaintiff’s witness Engberg corresponded to notices of cancellation which were mailed to the insureds set forth thereon. He testified that it is the course of plaintiff’s office practice to take such a list to the post office along with the cancellation notices enclosed in stamped and addressed envelopes, show same to the clerk on duty, who then checks the names and addresses on the envelopes against the list and that when they correspond he marks it with a stamp of the United States Grovernment. Plaintiff’s Exhibit 5 contains a number of names and addresses, including that of the defendant, together with the number of his *169 policy and his Brooklyn address. A post-office stamp of the New York City Madison Square Station affixed on the righthand corner of the list contains the date “ June 10, 1957.”
It is clear from the foregoing, and the court finds that the plaintiff has established, by competent proof, the mailing on June 10, 1957 to the defendant at his address in Brooklyn, as stencilled on the supplement page renewing his policy for 1957-1958, a notice of cancellation effective on June 22, 1957, unless by that time, defendant paid the sum of $24.65, the balance of the installment of premium which was payable on the renewal of the policy. This notice, given in accordance with the terms of the policy and the first paragraph of section 93-c of the Vehicle and Traffic Law was sufficient, although it was not received by the defendant. (Byard v. Royal Ind. Co., 49 N. Y. S. 2d 60.)
Defendant’s contention that plaintiff did not comply with the second paragraph of said section is predicated upon the fact that the notice of cancellation (form “ FS-4 ”), which plaintiff mailed to the Commissioner of Motor Vehicles in Albany, shows on its face that it was received and, therefore, filed on July 24, 1957, 2 days after the expiration of the 30 days following the effective date of the cancellation on June 22, 1957. Plaintiff’s witness, Engberg, admitted that he had no personal knowledge of the mailing of such notice, but insisted that it was mailed on July 19, 1957. When asked on cross-examination: 11 You really said it should have been mailed the 19th, but you don’t know as a fact that it was mailed; isn’t that correct? ”, he answered: “ That’s correct.”
The late filing of the notice with the Commissioner of Motor Vehicles, whatever the consequences thereof with his department, did not affect the prior cancellation of the policy which, as here, was perfected by the giving of notice to defendant in accordance with the terms of the policy and the provisions of the first paragraph of section 93-c. The purposé of the filing requirement of the notice of cancellation with the Commissioner “ Upon the termination of insurance by cancellation or failure to renew ” (emphasis supplied) was to enable him to revoke the assured’s registration for lack of the financial security required by the Motor Vehicle Financial Security Act. It was not one of the conditions precedent to the cancellation of the contract of insurance and the termination of coverage.
The law, however, does not favor a forfeiture, and it has been held waived in cases where the party claiming it has acted inconsistently therewith with knowledge of the breach. (Titus v. Glens Falls Ins. Co., 81 N. Y. 410, 419.) Here, plaintiff had *170 notice of the accident from the day it occurred on July 23, 1957, when it commenced the investigation thereof. It made no disclaimer, however, until October 4, 1957, after it had undertaken, without reservation, to defend the negligence action which the injured third party had brought against defendant by attorneys chosen by it pursuant to the terms of the policy. These attorneys had already proceeded to defend that action in such vital respects as drafting and serving defendant’s answer which one of their associates verified on September 9, 1957; in drafting and serving a demand for a bill of particulars and in attending defendant’s examination before trial by the plaintiff in the negligence action, the transcript of which they sent to him for reading, correction and subscription, as late as October 16,1957. Thus for a period of more than two months, plaintiff had assumed exclusive control of the investigation of the claim and later of the defense of the action which arose from the accident, all in accordance with the terms of the policy.
Surely the plaintiff, which now claims that the policy was can-celled on June 22, 1957, knew or should have known that fact shortly after the date of the accident on July 23, 1957. Indeed, as late as September 21, 1957, it certified defendant’s coverage for the “ policy period from 6/22/57 to 4/10/58 ” by issuing an “ FS-1 ” certificate (deft’s Ex. B).
Plaintiff charges in its complaint that it had issued this certificate of coverage “by reason of the false and fraudulent representation made by the defendant to the agent of the plaintiff ” at its Brooklyn, New York, office to the effect “ that his insurance policy had never been cancelled ’ ’ and that all of the acts of the defendant subsequent to the accident of July 23, 1957, in relation to the plaintiff ‘1 have been done with the intent that by fraud and misrepresentation the defendant would mislead the plaintiff into the act of reinstating retroactively the cancelled policy of insurance so that the said personal injury caused by his operation of the automobile on July 23, 1957, would be covered by the plaintiff insurance company.” It is elementary, however, that fraud will not be presumed; that it cannot be based merely on suspicion, conjecture or doubtful inference but must be established by clear and convincing proof. (Fein v. Starrett Television Corp., 280 App. Div. 670, 673, affd. 305 N. Y. 856; Lynch v. Gibson, 254 App. Div. 47, 51, affd. 279 N. Y. 634.) Such proof is lacking in this case.
While the defendant did not inform Peterson, plaintiff’s authorized agent who issued the “ FS-1 ” certificate on September 21, 1957, that he had been involved in an accident and that the $70 he had mailed on July 26, 1957, had been returned, he *171 showed Peterson the revocation notice dated September 20, 1957, he had received from the Motor Vehicle Burean, and Peterson admitted on the witness stand that he knew that defendant’s policy had been cancelled by the plaintiff on June 22, 1957. In view of such knowledge, it cannot be said that this “PS-1” certificate was issued as the result of fraud. There was voluntary action here by the plaintiff through its authorized agent with knowledge of the essential facts, admitting coverage, notwithstanding its present claim that September 21, 1957, was a Saturday when its records could not be fully checked. (See Laughnan v. Aetna Cas. & Sur. Co., 1 Wis. 2d 113.) Indeed, on the basis of plaintiff’s September 21, 1957 certification of coverage, the Commissioner of Motor Vehicles rescinded the revocation that had been issued against the defendant upon receipt of an “ PS-4 ” form showing termination of his coverage as of June 22, 1957. The Commissioner’s letter of November 1,1957 concluded: “ In view of the PS-1 filed by you subsequent to the termination, it would appear that you had coverage on this car at the time of the accident of July 23, 1957.”
In persisting, as aforesaid, in the performance of acts inconsistent with the cancellation of the policy now relied upon, of which plaintiff must be presumed to have had knowledge, instead of standing “ upon its rights ” within reasonable time after it was informed of the accident on July 23, 1957, plaintiff must be deemed to have waived the cancellation, reinstated the policy, and is now estopped from asserting that the accident was not covered by such policy. (269 Canal St. Corp. v. Zurich Gen. Acc. $ Liab. Ins. Co., 226 App. Div. 516, 519, affd. 252 N. Y. 603; Rosenbloom v. Maryland Cas. Co., 153 App. Div. 23; Keats v. Moss, 5 Misc 2d 571, 575.) Any other result .would be inequitable to the defendant who must be presumed to have been prejudiced by plaintiff’s conduct in undertaking the exclusive control of the investigation of the claim and later of the defense of the action in accordance with the terms of the policy, without any reservation of rights. (Moore Constr. Co. v. United States Fid. & Guar. Co., 293 N. Y. 119,123-125.)
Judgment, without costs, is accordingly granted in the defendant’s favor declaring such policy in full force and effect with respect to the accident in which the defendant and his automobile were involved on July 23, 1957, as a result of which Esther Mandel brought an action against him which is now pending in this court.
Settle judgment.