OPINION OF THE COURT
Chief Judge Wachtler.
Claimant owned a small hotel which was destroyed by fire and which was insured by a company now insolvent and in liquidation by order of a Missouri court. He seeks to share as a creditor in the available assets, but the Superintendent of Insurance has rejected his claim on the ground that the liquidation order canceled all of the company’s policies on a specified date, before the fire occurred. Claimant was not a party to the liquidation proceedings and, as both lower courts held, received no actual or constructive notice of the cancellation order before sustaining the loss. Although the policy provides that it cannot be terminated unless the insured receives prior written notice of cancellation, the courts below upheld the Superintendent’s determination concluding that the claimant’s rights under the policy were extinguished by operation of law when the company was placed in liquidation.
On this appeal claimant urges that the order of the Missouri court did not extinguish vested rights and that he had a vested right to prior notice of any cancellation before the policy could be effectively terminated, which he did not receive. He also contends that he had a due process right to some form of actual notice before the court canceled the policy because it is fundamentally unfair for the State to deprive a person of insurance protection under an existing contract without, at least, giving the insured notice of the cancellation order and a reasonable opportunity to obtain another policy to cover the risk.
We have concluded that there is merit to the claimant’s first argument and, therefore, reverse the order of the Appellate Division without reaching the constitutional issue.
*16 In 1984, the claimant, Alan Digirol, owned the Alton Hotel, located in Sodus, New York. Through a local insurance agent he purchased a multiperil policy, including fire insurance, for the hotel. The policy was issued by the Transit Casualty Co., a foreign corporation, domiciled in Missouri, with its principal place of business in California, but also authorized to do business in New York. The term of the policy was three years, beginning on February 29, 1984, and ending on February 29, 1987. The policy also provided for cancellation before the expiration date "by mailing to the named insured at the mailing address shown in the Declarations, written notice stating when not less than ten days thereafter such cancellation shall be effective.”
On December 4, 1985, a Missouri court found that Transit was insolvent and ordered that it be liquidated. A permanent receiver and deputy special receiver were appointed to administer the liquidation. The liquidation order further provided: "All policies of insurance issued by defendant Transit Casualty Company cancelled effective at midnight on December 20, 1985.” Pursuant to the Uniform Insurers Liquidation Act (Insurance Law § 7410 [a]), the Supreme Court of this State appointed the New York Superintendent of Insurance as ancillary receiver with respect to Transit’s assets and creditors located here.
On December 6 and 10, the deputy receiver had the liquidation order published in the New York Law Journal. Before the effective date of the cancellation order, he also mailed letters to all policyholders notifying them of the cancellation. Included with the letter was a copy of the liquidation order and a memo informing the policyholders that, although the court had specified December 20 as the date of termination, "many states require a longer period from the order of liquidation until the date of policy cancellation” and that some guarantee associations "might afford you some protection” beyond that date. The memo concluded by advising policyholders to consult local counsel if a claim arises after the cancellation date specified in the liquidation order.
This notice was mailed to the claimant on December 15, but was sent to claimant’s old address, although reference to the insurance policy would have revealed claimant’s correct current address under "policy changes.” When the post office returned the letter as undeliverable, the deputy receiver simply placed it in the file and made no further effort to notify claimant.
*17 On February 16, 1986, the Alton Hotel was destroyed by fire. When Digirol attempted to collect on the policy, he learned that Transit was in liquidation and that all claims would have to be submitted to the receiver or ancillary receiver. He then submitted a claim to the Superintendent, but it was disallowed on the ground that the policy had been canceled by order of the Missouri court before the fire occurred. Claimant objected, arguing that he never received notice of the cancellation as required by the policy. The Superintendent reconsidered the claim but again rejected it, noting that the liquidation order canceling the policies did not require notice and by its terms became effective on December 20, 1985. The Superintendent also indicated that notice of the cancellation had been mailed to the claimant, but claimant denied receiving it.
The matter was referred to a Referee, who concluded, after a hearing, that notice was published and mailed as indicated above, but found that the claimant did not actually have notice of the Missouri liquidation proceeding or the court-ordered cancellation prior to sustaining the loss. He recommended that the claim be allowed because publication and mailing to a prior address, when the current address was available, did not constitute prior written notice as required by the policy for an effective cancellation. The Supreme Court confirmed the Referee’s factual findings but disaffirmed the conclusions of law and sustained the Superintendent’s determination. The Appellate Division affirmed.
The courts below held, in essence, that the Missouri order placing Transit in liquidation terminated all of the claimant’s future rights under the policy, including the right to prior written notice of cancellation as well as the right to continued insurance protection for future losses. On this appeal claimant concedes that he had no absolute right to continued insurance coverage, but urges that he had a right to be notified of cancellation before it could be deemed effective. The question is not whether this provision called for future performance on the part of the insurer or its successors, but whether the claimant’s right to notice of cancellation was matured or vested at the time of liquidation. As the Superintendent concedes, the contractual obligation to pay for losses suffered prior to insolvency survives liquidation and the policyholder is entitled to share as creditor in the available assets to the extent of the loss because the obligation to pay was ripe at the *18 time of liquidation (Matter of Empire State Sur. Co., 214 NY 553; see also, 2A Couch, Insurance 2d, § 22:74 [rev ed]). But the obligation to pay is not the only obligation that may be mature at the time of liquidation. For instance, if a policy providing for liability coverage also obligates the company to furnish legal representation to the insured, an order liquidating the insurer for insolvency after an accident has occurred will not terminate the matured obligation to defend the pending suit and the future cost of the defense will be allowed as a claim against the insolvent’s estate (Matter of Empire State Sur. Co., supra; see also, Matter of Consolidated Mut. Ins. Co., 77 NY2d 144 [order terminating an insolvent insurance company’s liabilities did not terminate right of retired employees to lifetime health care benefits when those rights vested pursuant to statute before the company was placed in liquidation]).
In the case now before us the claimant’s fire insurance policy was subject to cancellation during its term, but only if prior written notice of the cancellation was mailed to the insured. This created a distinct contractual right, which must also be recognized as a valuable property right deserving of protections (see, e.g., Brock v Roadway Express, 481 US 252), in addition to the primary insurance protection. The right to notice of cancellation gave the policyholder the additional assurance that if coverage was discontinued, he would be informed of the fact that his property was again at risk so that he could obtain another policy to insure against the risk. The requirement that the notice precede the cancellation enhanced this right by assuring the policyholder that the opportunity to obtain coverage from another company would be available before there was a lapse in coverage. At the time of liquidation in this case that right matured and what remained to be done was for the company, or its successor, to perform the contractual obligation by informing the insured of the impending cancellation. That obligation to give notice of cancellation could not be satisfied by publication, or mailing notice to the wrong address, when the correct current address was included in the policy (see, Matter of McCann v Scaduto, 71 NY2d 164; cf., Allstate Ins. Co. v Altman, 21 Misc 2d 162; Byard v Royal Indem. Co., 49 NYS2d 60).
The Superintendent contends that recognition of a vested right to notice is inconsistent with the orderly and equitable administration of liquidation proceedings because the rights of all creditors must be fixed and valued as of the date the *19 proceeding commenced. Since the insured had suffered no loss as of that date, the Superintendent urges that he was only entitled to return of the unearned premium and his policy should be valued accordingly.
Statutes providing for the liquidation of insolvent insurance companies are designed to protect creditors, policyholders and the general public by providing a comprehensive and efficient means for collecting the insolvent’s assets and equitably paying the claims of creditors (Matter of Knickerbocker Agency [Holz], 4 NY2d 245; Matter of Empire State Sur. Co., 214 NY 553, supra). The present liquidation procedures and practices are not as inflexible as the Superintendent urges. The traditional rule that creditors’ claims should be valued as of the date of dissolution was intended to insure equal treatment of creditors similarly situated and, as the Superintendent recognizes, now may be changed by court order fixing a different date for making the valuation (Matter of Empire State Sur. Co., supra; see also, Insurance Law § 7405 [b]). In addition, policyholders’ rights to coverage may continue for some time after the entry of the dissolution order when, as here, the court orders that cancellation shall occur at some future date (see also, e.g., Matter of Professional Ins. Co. [Jason — Superintendent of Ins. of State of N. Y.], 67 AD2d 850, affd 49 NY2d 716). This procedure allows, and undoubtedly contemplates, notice to policyholders that their current insurance protection is about to be terminated.
In fact, in this case the receiver utilized this period to send notice to the policyholders of the impending cancellation and, in most instances apparently, the insured received notice prior to the effective date. The problem here is not that the liquidation process foreclosed prior notice of cancellation, but that the receiver sent claimant’s notice to the wrong address. In addition, the receiver knew or should have known that the notice was misdirected when the letter containing the notice was returned by the post office. Nevertheless, despite the fact that the correct current address was listed on a policy document, nothing further was done to notify the insured before the loss occurred nearly two months after the company was placed in liquidation.
What occurred here is analogous to the failure to notify a creditor in a liquidation or bankruptcy proceeding of the time within which claims must be submitted (see, e.g., Insurance Law § 7432 [b]). The orderly administration of such proceed *20 ings contemplates that all claims will be submitted within a limited time frame fixed by the court and that claims submitted after that time will be disallowed. However, a creditor’s right will not be extinguished, and an untimely claim must be allowed, when the creditor has not received notice of the order establishing the time limit (New York v New York, New Haven & Hartford R. R. Co., 344 US 293). Similarly, in this case, the court’s order canceling the insurance policies on a fixed date should not extinguish the claimant’s coverage where he received no notice of the impending cancellation, which the State, as successor to the insolvent corporation, was bound to provide. Allowing this claim for loss sustained after the court ordered the cancellation is not inequitable to other policyholders who were informed of the court’s order and thus had an opportunity to continue their coverage by obtaining new policies. As to those policyholders, return of the premium should make them whole.
The conclusion we have reached is not inconsistent with the letter or spirit of the Uniform Insurers Liquidation Act as the dissent contends. The specific goals of the Uniform Act are set forth in a prefatory note identifying particular aspects of State liquidation proceedings which caused unwarranted dissipation of the assets of defunct multistate insurers (13 ULA 322-323 [1986 Master ed]; see also, Murphy Co. v Reserve Ins. Co., 54 NY2d 69, 76-77). The various State laws requiring notice of cancellation to policyholders was not identified as a wasteful procedure needing reform, and nothing in the Act obligates States subscribing to its terms to abandon statutory or decisional law requiring notice of cancellation to be sent to policyholders before an insurance contract is canceled (see, e.g., Dardar v Insurance Guar. Assn., 556 So 2d 272 [La Ct App]). On this and many other aspects of the liquidation process the Uniform Act is silent because it was not intended as a comprehensive scheme displacing all State laws, substantive and procedural, relating to liquidation of insolvent insurance companies. The Uniform Act, for instance, does not require that creditors be notified of the time fixed for submitting claims (Uniform Insurers Liquidation Act §§ 2, 5 [9 ULA 332, 345 (1986 Master ed)]), but it does not follow from this that State laws requiring such notice (see, e.g., Insurance Law § 7405 [a]) are ineffective when the insurance company has been liquidated in another jurisdiction subscribing to the Act.
The over-all purpose of the Uniform Act, like liquidation proceedings generally, is not only to preserve available assets *21 for the benefit of creditors, but to protect the interest of persons who purchased insurance policies from a company which has become insolvent. Requiring State officials liquidating the company to notify policyholders that this or another State has terminated the contract on which they rely is not inconsistent with that goal, particularly when the insured persons have paid for the right to receive such notice so that they may continue insurance protection by obtaining another policy.
Accordingly, the order of the Appellate Division should be reversed, with costs, and claimant’s cross motion to confirm the Referee’s report granted.