OPINION OF THE COURT
Walter B. Tolub, J.
Introduction
This proceeding is the culmination of three decades of skirmishing over whether the Comptroller of the State of New York has the authority to audit the New York State Insurance Department Liquidation Bureau. The court concludes that the Comptroller does not possess that authority.
At the outset the court notes that it is not so naive as to be unable to appreciate the political significance of this struggle to the parties. However, the role of the judiciary is limited to enforcing statutes and ruling on challenges to their constitutionality (Benson Realty Corp. v Beame, 50 NY2d 994, 996 [1980]). The judiciary does not sit as a superlegislature empowered to weigh the wisdom, reasonableness or desirability of legislation (SHAD Alliance v Smith Haven Mall, 66 NY2d 496 [1985]; Amsterdam-Manhattan, Inc. v City Rent & Rehabilitation Admin., 43 Misc 2d 889 [Sup Ct 1964], affd 21 AD2d 965 [1st Dept 1964], affd 15 NY2d 1014 [1965]). The court’s role is to ascertain and give effect to the intent of the Legislature and to avoid construing any statute in such a way as to render it ineffective (National Org. for Women v Metropolitan Life Ins. Co., 131 AD2d 356, 358 [1st Dept 1987]).
Petitioners, the Superintendent of the New York State Insurance Department and employees of the Liquidation Bureau, move to quash 10 subpoenas served by the respondent, the Comptroller. The Comptroller counterclaims for enforcement of the subpoenas and for a declaration (i) that the Comptroller possesses the authority to preaudit all expenditures and to post-audit financial management of the Liquidation Bureau, and (ii) that this power to audit extends to all assets held by the Superintendent, including abandoned property and abandoned property reports in open and closed insurer estates. The authority to conduct such an audit derives, according to the Comptroller, from the State Constitution, the State Finance Law and the Abandoned Property Law.
A preaudit is essentially a review by the Comptroller of a transaction prior to payment. If the Comptroller is vested with such authority, he could effectively participate in the settlement *837 of claims against the insured of insolvent insurers and participate in negotiating contracts entered into by the Superintendent on behalf of the insolvent insurers. A postaudit essentially constitutes a general review of past transactions in order to improve overall efficiency and effectiveness. In conducting post-audits, the Comptroller would review the performance of the Liquidation Bureau, including the operations of insolvent insurers.
Petitioners argue that the Comptroller does not have the constitutional or statutory authority to access the records of the Liquidation Bureau or to examine its employees through an audit, or in the alternative, that the subpoenas are too broad. Petitioners further argue that if the subpoenas are not quashed the court should at the very least prohibit the Comptroller from removing and retaining nonpublic documents from the offices of the Liquidation Bureau as this would render the documents subject to the Freedom of Information Law. The Comptroller argues in opposition to the petition that because the Superintendent is an officer of the State of New York, any moneys in his possession, custody or control are subject to audit by the Comptroller pursuant to the language of the Constitution and State Finance Law § 111. The Comptroller also argues that he is entitled to conduct a review pursuant to the provisions of the Abandoned Property Law.
The Subpoenas
The Comptroller served testimonial subpoenas on the Superintendent and eight employees of the Liquidation Bureau. These subpoenas seek testimony regarding all official accounts, all moneys under the control of these officials and the books and records required to be kept with regard to abandoned property reports filed with the Comptroller. The stated purpose of the subpoenas is to determine whether the financial management and operating practices of the Liquidation Bureau are effective in carrying out its responsibility to liquidate and settle the affairs of insolvent insurance companies and to establish the accuracy and completeness of abandoned property reports filed with the Comptroller under the Abandoned Property Law. The tenth subpoena served on the Liquidation Bureau requires the production of documents set out in a schedule of 36 demands and states the same purpose and basis for the production. These expansive demands include production of various documents that relate to the operation of insolvent insurance companies, including financial records of the insolvent insurers.
*838 The Authority of the Comptroller to Audit Political Subdivisions of the State
The audit authority of the Comptroller derives initially from New York State Constitution, article V, § 1, which provides in pertinent part:
“The comptroller shall be required: (1) to audit all vouchers before payment and all official accounts; (2) to audit the accrual and collection of all revenues and receipts; and (3) to prescribe such methods of accounting as are necessary for the performance of the foregoing duties. The payment of any money of the state, or of any money under its control, or the refund of any money paid to the state, except upon audit by the comptroller, shall be void ... In such respect the legislature shall define the powers and duties and may also assign to him or her: (1) supervision of the accounts of any political subdivision of the state . . . The legislature shall assign to him or her no administrative duties, excepting such as may be incidental to the performance of these functions, any other provision of this constitution to the contrary notwithstanding.”
This section of the Constitution establishes the Comptroller as the independent auditing official for the affairs of the State (Patterson v Carey, 41 NY2d 714, 723 [1977]). The Legislature is empowered with the authority to assign to the Comptroller the supervision of accounts of any political subdivision (id. at 723-724). The Constitution prohibits the Legislature from assigning to the Comptroller any administrative duties except those incidental to the performance of the constitutional functions (id. at 724).
The Comptroller is “ ‘a vital part of the constitutional machinery for assuring accountability in the expenditure of [state] funds’ ” (Cohen v State of New York, 94 NY2d 1, 16 [1999], quoting Matter of McCall v Barrios-Paoli, 93 NY2d 99, 104 [1999]). The Constitution thus permits the Legislature to assign to the Comptroller supervision of the accounts of political subdivisions and incidental administrative duties (Matter of McCall, 93 NY2d at 107). “The Comptroller’s historical role is not that of a mere auditor who performs any and all audits. The Comptroller is ‘an independent auditing official for the affairs of the State’ ” (Blue Cross & Blue Shield of Cent. N.Y. v McCall, 218 AD2d 140, 144 [3d Dept 1996], affd 89 NY2d 160 [1996], quoting Patterson, supra).
*839 “All of the duties defined within article V, § 1, whether required or discretionary, are in furtherance of the fundamental duty of the office, to ‘[superintend the fiscal concerns of the state’ ” (Blue Cross & Blue Shield of Cent N.Y. v McCall, 89 NY2d 160, 166 [1996], quoting State Finance Law § 8). The Legislature may not delegate administrative duties to the Comptroller where such duties are not incidental to the primary function of the Comptroller in superintending the fiscal concerns of the State (id. at 171). There must be a nexus between a statutorily imposed responsibility and functions constitutionally designated to the Comptroller (see County of Rensselaer v Regan, 173 AD2d 37, 42 [3d Dept 1991], affd 80 NY2d 988 [1992]).
The State Legislature has defined and assigned powers to the Comptroller under State Finance Law § 111, which reads in pertinent part:
“No moneys of the state, including moneys collected in its behalf, and no moneys in the possession, custody or control of any officer, agent, or agency of the state in his [sic] or its representative capacity, and no moneys in or belonging to any fund or depositary, title to which is vested in the state, shall hereafter be paid, expended or refunded except upon audit by the comptroller.”
However, as previously noted, the State Constitution prohibits the Legislature from assigning to the Comptroller administrative duties not incidental to the primary function of the Comptroller in superintending the fiscal concerns of the State.
The Legislature has also provided the Comptroller with limited authority to audit records related to abandoned property. Abandoned Property Law requires abandoned property, as defined by the statute, to be paid over to the Comptroller. The statute also establishes certain record-keeping and reporting requirements. Section 1412-a of the Abandoned Property Law requires that a reporting entity keep records that establish the accuracy of reports and requires that records kept for this purpose be made available to the Comptroller upon request.
The Comptroller thus possesses the authority to review for accuracy records kept in connection with abandoned property reports.
*840 The Superintendent as Liquidator of an Insolvent Insurance Company
The Superintendent may apply to the court for an order directing the rehabilitation or liquidation of an insurance company where the company is insolvent or has failed to meet any specified obligations (see Insurance Law §§ 7402, 7404). An insurer is insolvent when its financial statement indicates that the company is unable to pay its outstanding lawful obligations as they mature, as shown by an excess of required reserves and other liabilities over admitted assets, or by not having sufficient assets to reinsure all outstanding risks (Insurance Law § 1309). “Admitted assets” are defined by Insurance Law § 1301.
An order of rehabilitation or liquidation directs the Superintendent to take possession of the property of the insurer (see Insurance Law §§ 7402, 7404). Under an order of liquidation, the title of all property, contracts and rights of action of the insurer vests by operation of law with the Superintendent (Insurance Law § 7405 [b]). The Superintendent may dispose of assets of the insurer only with the approval of the court and may distribute payments, under the direction of the court, in a manner that properly recognizes the statutorily established claim priorities (Insurance Law §§ 7428, 7434). Nothing in the language of the statute implies that the Legislature granted authority over the disposition of assets of an insolvent insurer to the Comptroller.
While the payments out of assets of an insolvent insurer are governed by article 74 of the Insurance Law, the Superintendent may pay, with court approval, approved claims against insurance policies issued by the insolvent insurer from the security funds established by article 76 of the Insurance Law (see Insurance Law §§ 7603, 7604). The security funds are funded by payments made by insurers under a statutory formula (Insurance Law § 7603 [b]; § 7604 [b]). The role of the Superintendent as administrator of the security funds is separate and distinct from the role of liquidator (see Royal Bank & Trust Co. v Superintendent of Ins. of State of N.Y., 92 NY2d 107, 114 [1998]).
An important distinction between these two articles is that while payments made out of assets of an insurer under article 74 are made in the order of priorities established by the statute to any of the category of claimants listed, including various types of creditors, payments out of the security funds are limited to unpaid claims against policies issued by the insolvent insurer (compare Insurance Law § 7602 [g]; § 7603 [a]; § 7604 [a], with *841 Insurance Law § 7434). The approved claims of any creditor may be made from assets of an insolvent insurer but only claimants under insurance policies may be paid out of the security funds. Given the order of priorities, an insurance company may be liquidated with all claims under policies satisfied entirely out of the company’s assets and without payment from the security funds.
The Assets of an Insolvent Insurer in the Possession of the Superintendent are Not Held in a Representative Capacity as a State Officer
The Comptroller argues that, under the plain meaning of article Y, § 1 of the NY Constitution and State Finance Law § 111, he is authorized to audit the Superintendent’s operation of insolvent insurers because the Superintendent is an officer of the State and the subject of the audit is money under his custody and control. However, the money in the custody of the Superintendent in the role of liquidator pursuant to Insurance Law article 74 is neither state money nor money under the Superintendent’s control in a representative capacity as a state officer. The Superintendent, as discussed below, is a de facto receiver or administrator of the assets of an insolvent insurer subject to the control of the court. As the Court of Appeals noted in Matter of National Sur. Co. (286 NY 216, 223 [1941]), “a claim against the assets of [a] dissolved insurance company may be allowed or disallowed only by the court” (emphasis supplied). To the extent the Comptroller relies on State Finance Law § 111, it is the court’s opinion that that statute is not applicable.
The purpose of a liquidation proceeding is to preserve all available assets for the benefit of creditors and to protect the interests of persons who purchased policies from a company that has become insolvent (Matter of Transit Cas. Co., 79 NY2d 13, 20-21 [1992]). “The general rule is that a liquidator of an insurance company ‘stands in the shoes’ of the insolvent ...” (Matter of Union Indem. Ins. Co., 234 AD2d 120, 123 [1st Dept 1996] [internal quotation marks omitted]). The Superintendent as liquidator is similar to a statutory receiver (Matter of Kinney, 257 App Div 496, 498 [3d Dept 1939], affd 281 NY 840 [1939]). While the Superintendent supercedes and acts in place of officers and stockholders to control the corporate affairs of an insurer in liquidation, only legal title of the property of the insolvent insurer passes to the control of the Superintendent (id. at 498-499). Equitable title remains for ultimate distribution to creditors and policyholders (id.).
*842 As liquidator, the Superintendent does not operate for the benefit of the general public (Corcoran v National Union Fire Ins. Co., 143 AD2d 309, 311-312 [1st Dept 1988]). The Superintendent acts on behalf of a private corporation, not one utilized by the State to discharge governmental duties (id.). The Legislature has granted the Superintendent plenary powers to manage, as a fiduciary, the affairs of an insolvent insurer (Corcoran v Ardra Ins. Co., 77 NY2d 225, 232 [1990]).
The Superintendent, as liquidator, occupies “a legal personality separate and distinct” from the position of public official charged with regulating the insurance industry generally (Corcoran v Becker, 140 AD2d 62, 67 [1st Dept 1988]). The funds of an insolvent insurer in the control of the Superintendent are impressed with a trust in favor of all creditors of the corporation (Matter of Bean, 207 App Div 276, 279 [4th Dept 1923], affd on other ground Matter of Bean v Stoddard, 238 NY 618 [1924]). In this capacity, the Superintendent does not hold the funds as a public officer and the State has no interest in the funds (id.). Thus such funds are not funds under the control of the State or the Superintendent in a representative capacity within the meaning of article V, § 1 of the NY Constitution.
The Constitution limits the Comptroller’s powers, as relevant herein, to the supervision of the state fisc and related administrative duties (see Blue Cross & Blue Shield of Cent. N.Y. v McCall, 89 NY2d 160, 166 [1996]). Administrative duties unrelated to the Comptroller’s duty to superintend the fiscal concerns of the state are proscribed by the plain language of article V, § 1 of the NY Constitution (id.). The liquidation of an insurer does not effect the state fisc.
Thus the constitutional proscription against the Legislature assigning administrative duties to the Comptroller, except as related to supervising the state fisc, proscribes the authority of the Comptroller to audit insurance companies in liquidation. Because the Comptroller seeks to audit the operations of insolvent insurers, the subpoenas issued by the Comptroller, to the extent they are based upon the liquidation of insolvent insurers, is administrative and not in furtherance of or incidental to the duties to superintend the fiscal concerns of the State.
History of Article V, § 1
Nor does the history of the subject amendment to New York State Constitution, article Y, § 1 support the Comptroller’s in *843 terpretation. The most significant discussion about what was under consideration is contained in Problems Relating to Taxation and Finance (10 Reports of Constitutional Convention Comm, 1938, ch 1, Appendix A, at 31-36). The Comptroller, however, cites to a letter from the Banking Department in the record of the Constitutional Convention of 1938. The Banking Department objected to a proposed modification to the Constitution to the effect that “no moneys received or paid by any State department, regardless of source, shall be exempted from audit by the Comptroller . . .” (3 Revised Rec, 1938 NY Constitutional Convention, at 2352). Significantly, the language “regardless of source,” used by the Banking Department, was never included in the amendment that was ratified.
The limited statement of Justice Francis Bergan, also cited by the Comptroller, speaks of extending the powers of audit to “certain agencies of the state which control and have possession of moneys which are not properly State moneys and which pay out, as the Insurance Fund does, moneys without any audit by the Comptroller” (3 Revised Rec, 1938 NY State Constitutional Convention, at 2350). This statement refers specifically to audit of the security funds; it does not address the audit of insolvent insurers under the control of the Superintendent.
History of State Finance Law § 111
Likewise the legislative history of State Finance Law § 111 does not establish the Comptroller’s authority to audit the Liquidation Bureau’s operation of insolvent insurers. The Comptroller refers to a memorandum contained in the Bill Jacket (see Governor’s Mem in Support, Bill Jacket, L 1939, ch 863, at 15-16).* While the author opines that the bill is broad enough to require an audit of insurance companies in liquidation, the author admits that he did not have such audits in mind when he drafted the bill (id. at 15). More significantly, the inclusion of such a responsibility, were it intended, would violate the State Constitution’s proscription against assigning administrative duties to the Comptroller as previously discussed.
The author of the memorandum in the Bill Jacket further states that “the Insurance Department has made arrangements for supervision and pre-audit by the Comptroller” (id.). There is no indication from the Comptroller that this statement was inaccurate or that the officials at that time failed to reach a *844 consensus. Thus the limited extent of the supervision and audit by the Comptroller appears to have been in place since the time of enactment.
The Abandoned Property Law
Nor does the Comptroller possess the authority to conduct the broad audit sought under the Abandoned Property Law. While the court agrees that the Comptroller possesses the authority to review the records of insolvent insurers under this statute, that statute clearly limits the scope of review to records that establish the accuracy of any abandoned property reports. The subject subpoenas are not limited to records kept to establish the accuracy of abandoned property reports. Therefore, the subpoenas are overly broad.
Conclusion
For the foregoing reasons, the court determines that the subject subpoenas are overly broad. Accordingly, it is ordered that the motion and petition is granted to the extent that the subpoenas dated March 23, 2004 and served by respondent upon petitioners that seek to audit all official accounts and moneys under control of petitioners in operating insolvent insurers are hereby quashed as overly broad; and it is further ordered that the respondent’s counterclaim for an order directing petitioners to comply with the remaining portions of the subpoenas dated March 23, 2004 and served by respondent upon petitioners is denied; and it is further adjudged and declared that article V, § 1 of the NY State Constitution, State Finance Law § 111 and Abandoned Property Law § 1412-a do not empower the Comptroller of the State of New York with authority to preaudit and postaudit the financial management and operations of all insolvent insurers operated by the New York State Insurance Department Liquidation Bureau; and it is further adjudged and declared that article V, § 1 of the NY State Constitution, State Finance Law § 111 and Abandoned Property Law § 1412-a do not grant the Comptroller of the State of New York the authority to audit all property of insolvent insurers held by the Superintendent of the New York State Department of Insurance.

 State Finance Law § 12b, added by Laws of 1939 (ch 947, § 1), in substantially the same form.