DILLON TIRE, INC., APPELLEE, V. DON FIFER, DOING BUSINESS AS FIFER MOTOR VILLAGE, AND SAMS TRANS, INC., APPELLANTS.

589 N.W. 2d 137

Filed February 12, 1999.   No. S-97-1001.

148

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., for appellants.

William E. Olson and Kevin T. Lytle, of DeMars, Gordon, Olson and Shively, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

STEPHAN, J.

After obtaining a judgment against D.S.T. Trucking, Inc. (D.S.T.), Dillon Tire, Inc., brought this action against Don Fifer

(Fifer), doing business as Fifer Motor Village, and Sams Trans, Inc., pursuant to Nebraska's Uniform Fraudulent Transfer Act (Act), Neb. Rev. Stat. § 36-701 et seq. (Reissue 1998), based upon allegations that D.S.T. made certain fraudulent transfers to or for the benefit of Fifer and Sams Trans. Following a bench trial, the district court for Lancaster County found in favor of Dillon Tire and entered judgment against Fifer and Sams Trans. In a memorandum opinion filed June 17, 1998, the Nebraska Court of Appeals summarily affirmed the order of the district court, based upon its conclusion that the factual findings made by the district court were not clearly erroneous. We granted Fifer and Sams Trans' petition for further review in which they assert that the Court of Appeals applied an improper standard of review to reach an incorrect result.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Fifer and his wife, Sandra Fifer, each owned 50 percent of the stock of D.S.T., a corporation which, prior to its dissolution in April 1995 for nonpayment of corporate occupation tax, had been engaged in the business of over-the-road trucking. The Fifers also own the stock of Sams Trans, another trucking operation, which was incorporated in April 1994. In 1994 and 1995, Fifer also owned and operated Fifer Motor Village, a sole proprietorship engaged in automobile sales. At some point in 1993 or 1994, the Fifers decided to move to a warmer location. In order to do so, they decided to liquidate D.S.T. and operate a few trucks under only Sams Trans. The operations of D.S.T. were wound down during January, February, and March 1995, and D.S.T. was dissolved for nonpayment of corporate occupation tax in April 1995.

Dillon Tire instituted an action against D.S.T. in August 1994 to recover an amount due on an open account. This claim was reduced to a judgment in the amount of $7,810.30, plus interest and costs, on March 13, 1995. Several months later, Dillon Tire brought the present action pursuant to the "Nebraska Uniform Fraudulent Conveyance [sic] Act, Neb. Rev. Stat. Sections 36-701 through 36-712." In its petition, Dillon Tire asserted its position as a judgment creditor of D.S.T. In five separate causes of action, it alleged that D.S.T. had made payments of money to

or for the benefit of Fifer or Sams Trans "with the actual intent to hinder, delay or defraud Dillon Tire, Inc." Dillon Tire also alleged that D.S.T. executed these transactions "without receiving a reasonably equivalent value in exchange for the transfer" at a time when D.S.T. "intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due." Dillon Tire prayed for judgment in the amount of each transfer, as well as costs and "such other and further relief as may be just and equitable." Fifer and Sams Trans answered by general denial.

At the commencement of trial, Dillon Tire voluntarily dismissed one of its causes of action. Evidence was received with respect to the transfers which were the subject of the remaining four causes of action. These included (1) the use of D.S.T. funds to purchase a van which was titled in the name "Fifer Motor Village"; (2) the payment by D.S.T. to Nebraska's Department of Motor Vehicles (DMV), alleged to have been made on behalf of Sams Trans; (3) the payment by D.S.T. to Countrywide Insurance Agency, alleged to have been made on behalf of Sams Trans; and (4) the payment by D.S.T. to Omaha Truck Center Inc., alleged to have been made on behalf of Sams Trans. The parties stipulated that at the time of trial, the unpaid amount of Dillon Tire's outstanding judgment against D.S.T. was $7,730.96.

The district court found that each of the transfers was fraudulent as to Dillon Tire under the provisions of the Act and that "Don Fifer d/b/a Fifer Motor Village and Sams Trans., Inc., received fraudulent transfers or conveyances from . . . D.S.T., in an amount totalling $14,414.38." The court entered judgment against Fifer and Sams Trans in the amount of Dillon Tire's unsatisfied judgment against D.S.T. plus costs and postjudgment interest. The court further held that the "judgment shall be satisfied, in part, by the cash bond posted herein by Defendant Sams Trans., Inc., and filed with the Clerk of the Court, pursuant to the Stipulation entered by the parties to this action on November 15, 1995," and that any balance of the judgment not satisfied out of the bond proceeds "may be executed upon by Plaintiff against either Defendant." We note that neither the bond nor the stipulation referred to by the district court is con-

tained in the transcript prepared for this appeal.

Fifer and Sams Trans perfected an appeal from this order in which they assigned as errors (1) the insufficiency of the evidence to establish that the transfers were fraudulent and (2) the entry of judgment. Citing to *Wolf v. Degner*, 243 Neb. 702, 502 N.W.2d 440 (1993), both Fifer and Sams Trans and Dillon Tire asserted in their briefs that the action was equitable in nature and that the scope of review was de novo on the record. However, the Court of Appeals disagreed and held that this was an action at law because the "sole remedy sought and awarded was monetary damages." Applying a "clearly erroneous" standard of review, the Court of Appeals summarily affirmed pursuant to Neb. Ct. R. of Prac. 7B(2) (rev. 1996).

## II. ASSIGNMENTS OF ERROR

Fifer and Sams Trans contend, restated, that the Court of Appeals erred (1) in holding that the action was one at law which was not subject to a de novo review on appeal and (2) in holding that the evidence was sufficient to support the district court's finding that fraudulent transfers had occurred.

## III. ANALYSIS

### 1. SCOPE OF REVIEW

Although in many contexts the traditional distinctions between law and equity have been abolished, whether an action is one in equity or one at law controls in determining an appellate court's scope of review. See *Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 523 N.W.2d 364 (1994). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. Where credible evidence is in conflict on a material issue of fact, the appellate court will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Cheloha v. Cheloha*, 255 Neb. 32, 582 N.W.2d 291 (1998). However, in an appellate review of a law action, factual findings of the trial court have the effect of a jury verdict and will not be set aside on appeal unless they are

clearly wrong. *Foiles v. Midwest Street Rod Assn. of Omaha*, 254 Neb. 552, 578 N.W.2d 418 (1998).

The essential character of a cause of action and the remedy or relief it seeks as shown by the allegations of the complaint determine whether a particular action is one at law or in equity. *Central Sur. & Ins. Corp. v. Atlantic Nat. Ins. Co.*, 178 Neb. 226, 132 N.W.2d 758 (1965). The nature of an action, whether legal or equitable, is determinable from its main object, as disclosed by the averments of the pleadings and the relief sought. *Id.* This determination is unaffected by the conclusions of the pleader or what the pleader calls it. *Lone Cedar Ranches v. Jandebeur, supra.*

We have previously stated that an action seeking to declare a transfer fraudulent as to a creditor invokes equity jurisdiction of a court. *Wolf v. Degner*, 243 Neb. 702, 502 N.W.2d 440 (1993); *Carpenter Paper Co. v. Lakin Meat Processors*, 231 Neb. 93, 435 N.W.2d 179 (1989); *Brown v. Borland*, 230 Neb. 391, 432 N.W.2d 13 (1988); *Gifford-Hill & Co. v. Stoller*, 221 Neb. 757, 380 N.W.2d 625 (1986).

In addition, we have said that if a court of equity has properly acquired jurisdiction in a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation. *Miller v. School Dist. No. 69*, 208 Neb. 290, 303 N.W.2d 483 (1981). Equity looks through forms to substance. Thus, a court of equity goes to the root of the matter and is not deterred by forms. *Id.* See, also, *Thaggard v. Union Bank & Trust Company*, 277 Ala. 485, 172 So. 2d 49 (1965) (claims for damages are within protection of statutes authorizing bill in equity to set aside fraudulent transfers and once equity assumed jurisdiction, court would retain it for all purposes necessary to complete determination of cause).

The Court of Appeals distinguished this case from *Wolf v. Degner, supra*, on the basis that "Dillon Tire did not seek, and the trial court made no reference to, equitable remedies; the sole remedy sought and awarded was monetary damages." We disagree. It is clear from the record that Dillon Tire invoked the remedy afforded by the Act and that the district court applied

this statutory remedy, which we have characterized as equitable in nature. The Act defines "asset" as "property of a debtor" subject to certain exceptions not relevant here. § 36-702(2). It further defines "transfer" to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, *and includes payment of money*, release, lease, and creation of a lien or other encumbrance." (Emphasis supplied.) § 36-702(12). Thus, a fraudulent transfer in the form of a payment of money can be the subject of the equitable remedy afforded by the Act. For example, in *Carpenter Paper Co. v. Lakin Meat Processors, supra*, a judgment creditor sought to recover proceeds from the sale of assets of a corporate judgment debtor that had been assigned to its president and principal shareholder under theories that the assignment constituted a fraudulent conveyance and that the corporate veil should be pierced to permit recovery against the individual assignee. We characterized both theories of recovery as equitable in nature and reviewed the findings of the trial court de novo on the record.

We therefore conclude that the Court of Appeals erred in characterizing this action as one arising at law and applying the standard of review for such actions. To resolve this appeal of an equitable action, we must try factual issues de novo on the record and reach a conclusion independent of the findings of the trial court, provided that where credible evidence is in conflict on a material issue of fact, we may consider and give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Hanigan v. Trumble*, 252 Neb. 376, 562 N.W.2d 526 (1997); *Wolf v. Degner, supra*.

### 2. SUFFICIENCY OF EVIDENCE

Before commencing our de novo review of the factual issues, we summarize the applicable legal principles. Under the Act, a transfer may be determined fraudulent as to present and future creditors where it is shown that the debtor had actual intent to hinder, delay, or defraud a creditor. § 36-705. In addition, § 36-706 provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the

transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider knew or reasonably should have known that the debtor was insolvent.

However, pursuant to § 36-709(f),

A transfer is not voidable under subsection (b) of section 36-706:

(1) to the extent the insider gave new value to or for the benefit of the debtor after the transfer was made unless the new value was secured by a valid lien;

(2) if made in the ordinary course of business or financial affairs of the debtor and the insider; or

(3) if made pursuant to a good faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt of the debtor.

With respect to a corporate debtor, an "insider" is defined by the Act to include a director, officer, or person in control of the debtor, or a relative of such person. § 36-702(7)(ii)(A),(B),(C), and (G). Section 36-704(a) provides in relevant part that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." A debtor is considered "insolvent" under the Act "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." § 36-703(a). "A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." § 36-703(b).

In an action seeking to set aside a fraudulent transfer, the burden of proof is on a creditor to prove, by clear and convincing evidence, that fraud existed in a questioned transaction. *Gifford-Hill & Co. v. Stoller*, 221 Neb. 757, 380 N.W.2d 625 (1986).

Clear and convincing evidence is " 'that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved.' " *Id.* at 762, 380 N.W.2d at 629, quoting *Castellano v. Bitkower*, 216 Neb. 806, 346 N.W.2d 249 (1984).

Although Dillon Tire alleged that the transfers in question were made with actual intent to hinder, delay, or defraud, the district court made no finding of such intent, and we find no evidence supporting such allegations on our de novo review. Thus, we analyze the four transactions in question to determine whether they constituted fraudulent transfers as defined by § 36-706.

(a) Purchase of Van

On February 10, 1995, a date subsequent to the date on which Dillon Tire's claim arose, Fifer purchased a van for $2,500 using a D.S.T. check. The van was titled in the name of "Fifer Motor Village," and D.S.T. has not repaid the money used to purchase the van. Fifer testified that the van was purchased as a partial repayment of previous loans which, as a stockholder, he had made to D.S.T. The evidence establishes that Fifer was an "insider" with respect to D.S.T. as defined by § 36-702(7) and that the use of D.S.T. funds for the purchase of the van was in consideration of an antecedent debt. There is no contention or evidence that any of the factors set forth in § 36-709(f) are applicable. Thus, the transfer was fraudulent pursuant to § 36-706(b) if D.S.T. was insolvent at the time of the transfer and Fifer knew or reasonably should have known of the insolvency.

Whether insolvency exists is usually a question of fact. *J. L. Brock Bldrs., Inc. v. Dahlbeck*, 223 Neb. 493, 391 N.W.2d 110 (1986). The evidence establishes that by the end of 1994, D.S.T. owed delinquent payroll taxes in the amount of $27,526, which it was unable to pay because of insufficient revenues. The Fifers subsequently personally assumed the obligation to pay these taxes. D.S.T. also owed $35,593 in shareholder loans unpaid as of December 31, 1994. D.S.T.'s corporate tax return reflects an unpaid bank overdraft at the end of 1994. In addition, truck lease payments due in November and December 1994 and

January 1995 were not paid until February 1995. Although Sandra Fifer disclaimed any knowledge of the bank overdraft and testified that she generally tried to pay D.S.T.'s debts when they came due, we are required to defer to the fact that the trial court heard and evaluated her testimony in this regard. Based upon our de novo review, we conclude that by December 31, 1994, D.S.T. was insolvent under the test established by § 36-703(b) and that Fifer knew or should have known of the insolvency. We thus determine that Dillon Tire met its burden of proving by clear and convincing evidence that the use of corporate funds to purchase the van for the benefit of an insider for antecedent debt was fraudulent as to Dillon Tire under § 36-706(b).

### (b) Insurance Premium Payment

The evidence establishes that on March 13, 1995, D.S.T. issued a check for $1,892 to an insurance agency in connection with an application for an insurance policy covering a 1994 Freightliner truck. Sandra Fifer testified that the premium was initially paid in the ordinary course of business because the insurance premiums were due at that time. Although D.S.T. owned the truck at the time of the payment, Sams Trans was listed as the insured on the application for insurance. On March 27, 1995, the insurance company sent Sams Trans a notice of cancellation of the policy. On March 31, Sams Trans took possession of the truck and assumed the purchase contract on it. Sams Trans received refunds of the policy premiums in the amounts of $525 and $1,365 on April 13 and May 11, respectively. At the time of the first refund payment, D.S.T. had ceased operations, and by the time of the second payment, it had been dissolved. Although the Fifers testified that the refund money was used to pay some of D.S.T.'s creditors and to pay for D.S.T.'s permits and fees, there is no evidence of the dates, amounts, or recipients of such payments. Based upon our de novo review, we find that this payment was made after Dillon Tire's claim arose and at a time when D.S.T. was insolvent and that D.S.T. did not receive a reasonably equivalent value in exchange for the payment. We therefore conclude Dillon Tire

has proved by clear and convincing evidence that this payment constituted a fraudulent transfer pursuant to § 36-706(a).

### (c) Lease Payments

On February 7, 1995, D.S.T. paid $7,054.23 in delinquent lease payments for a 1993 Western Star semi-tractor truck leased by D.S.T. from November 1994 through February 1995. On March 24, 1995, Fifer assumed all obligations under the lease and took possession of the truck. While the record indicates that Fifer would not have been able to assume the lease if the delinquent payments had not been made, this fact is not determinative of the key issue, which is whether D.S.T. received reasonably equivalent value in exchange for the transfer. We conclude that it did. "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . . ." § 36-704. The lease payments satisfied obligations which D.S.T. incurred in the ordinary course of its business, and thus secured an antecedent debt. Based upon our de novo review, we determine that Dillon Tire has not met its burden of proving by clear and convincing evidence that such payments constituted fraudulent transfers.

### (d) Payment to Department of Motor Vehicles

On February 6, 1995, a debit was made to the D.S.T. checking account in order for a cashier's check to be issued to the DMV as payment for 1995 motor vehicle licensing fees and taxes for equipment owned by D.S.T. at the end of 1994. This amount included the license fees for the two trucks, a 1994 Freightliner and a 1993 Western Star, which were subsequently acquired by Fifer and Sams Trans. Sandra Fifer testified that the value of the fees paid by D.S.T. for the Western Star truck was $1,472.14 and that the value of the fees for the Freightliner truck was $1,498.01. When Fifer and Sams Trans acquired the vehicles, they were reregistered with DMV. The Fifers testified that the licenses were paid for in the regular course of D.S.T. business in February 1995 because that is when they became due. They further testified that permits and license fees were assignable and transferable, but not refundable. Sandra Fifer also testified that had the permits and licenses been turned back

in, they would have generated a refund of only approximately $80 per vehicle. Fifer testified that D.S.T. received refunds on three trucks in the amount of $84 each but did not state whether these included the Freightliner or Western Star trucks.

Based upon our de novo review, we conclude that Dillon Tire has not proved by clear and convincing evidence that the payment to DMV was fraudulent under the Act. As in the case of the lease payments, the relevant inquiry is not whether Sams Trans derived some benefit as a result of the payment by D.S.T., but, rather, whether D.S.T. received reasonably equivalent value in return for the payment. There is evidence that the license and permit fees were due as of December 31, 1994. Thus, D.S.T. received value in the form of licenses and permits in exchange for its payment to DMV. Further, it is clear from the Fifers' testimony that at most, $84 per truck could have been refunded to D.S.T. if the licenses and permits were turned back in. Thus, D.S.T. received "reasonably equivalent" value under § 36-706(a) for the payment because D.S.T. needed to make the payment in order to satisfy an obligation that was due and would not have been able to receive a refund of more than $168 total regardless of whether the trucks were subsequently transferred.

## IV. CONCLUSION

Based upon our de novo review, we affirm the finding of the district court that the payment by D.S.T. in the amount of $2,500 for the purchase of the van and the payment by D.S.T. in the amount of $1,892 for an insurance premium were fraudulent transfers as to Dillon Tire. We reverse the judgment of the Court of Appeals, summarily affirming the district court's determination that delinquent lease payments and payments made for license and permit fees due on December 31, 1994, constituted fraudulent transfers. The cause is remanded to the Court of Appeals with directions that it vacate the district court's previous judgment and enter judgment in favor of Dillon Tire in the amount of $4,392, representing the total amount of the fraudulent transfers made by D.S.T. as determined herein.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

MILLER-LERMAN, J., not participating.