STATE OF NEBRASKA EX REL. L. TIM WAGNER, DIRECTOR OF
INSURANCE OF THE STATE OF NEBRASKA, APPELLEE, V.
AMWEST SURETY INSURANCE COMPANY, APPELLEE,
AND SUNHOUSE INTERNATIONAL, INC.,
CLAIMANT, APPELLANT.
738 N.W.2d 813

Filed August 17, 2007.    No. S-06-049.

Robert F. Craig, P.C., for appellant.

John H. Binning, Robert L. Nefsky, and Jane F. Langan, of
Rembolt Ludtke, L.L.P., for appellee L. Tim Wagner.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN,
McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
NATURE OF CASE
This is an appeal from an insurer liquidation proceed-
ing under the Nebraska Insurers Supervision, Rehabilitation,

and Liquidation Act (the Act).[1] Sunhouse International, Inc. (Sunhouse), appeals the district court's approval of a downgrade of Sunhouse's claim against Amwest Surety Insurance Company (Amwest) to a class 6 late-filed claim.[2] Sunhouse did not receive actual notice of the liquidation proceedings until after the claim bar date. According to Sunhouse, despite the fact that the liquidator's file clearly contained Sunhouse's corporate address, the liquidator sent notice of the liquidation proceedings only to Sunhouse's former attorneys. Sunhouse asserts that such notice was insufficient under § 44-4822(1)(d) of the Act, which states that the liquidator shall give notice of the liquidation by first-class mail to all "persons known or reasonably expected to have claims against the insurer . . . at their last-known address as indicated by the records of the insurer."

## BACKGROUND

Sunhouse's claim against Amwest stems from a 1996 subcontract performance bond and subcontract labor and material bond which Amwest provided for Consolidated Techniques, Inc. (Consolidated), insuring its work relating to the construction of an elementary school in Miami, Florida. Sunhouse was a general contractor for the job and had hired Consolidated to do certain electrical work. Consolidated left the project before completion in August 1997, on the ground that it had not been fully paid. Alleging breach of contract, Sunhouse filed suit against Consolidated in Florida in April 1998. Sunhouse originally lost the suit, but the Florida Court of Appeals reversed the judgment and remanded the cause with directions to enter judgment in favor of Sunhouse and to determine further damages and costs.[3] Judgment in favor of Sunhouse was eventually entered in the amount of $423,471.16.

The Nebraska district court's order to liquidate Amwest was issued on June 7, 2001, during the pendency of the appeal of Sunhouse's Florida suit. A claim bar date for the liquidation

[1] Neb. Rev. Stat. §§ 44-4801 to 44-4862 (Reissue 1998).

[2] See § 44-4842(6).

[3] See *Sunhouse Const., Inc. v. Amwest Surety Ins.*, 841 So. 2d 496 (Fla. App. 2003).

proceedings was set for June 7, 2002, such that any claim filed after that date would be considered late filed. Affidavits by the vice president of Sunhouse and by Sunhouse's attorney reflect that Sunhouse did not receive actual notice of the liquidation.

As will be set forth in further detail in our analysis, Amwest's records contain Sunhouse's correct corporate address at 363 Granello Avenue, Coral Gables, Florida. Amwest's records also contain the address of attorneys who, according to Sunhouse, no longer represented Sunhouse at the time of the liquidation proceedings. The address for these attorneys was found in correspondence dating from the early years of the Florida litigation.

There is no dispute that Horizon Business Resources (Horizon), on behalf of the liquidator, sent notice to the attorneys shown in Amwest's records. The evidence is in dispute, however, as to whether the liquidator ever sent notice directly to Sunhouse at its Granello Avenue address.

Sometime in the spring of 2003, an attorney who represented Amwest and Consolidated in the Florida litigation advised Sunhouse's attorneys in Florida that Amwest was in liquidation in Nebraska. Soon thereafter, Sunhouse filed a proof of claim against Amwest in the Nebraska liquidation proceedings.

The liquidator informed Sunhouse that the claim would be considered a class 6 late-filed claim because notice had been sent to Sunhouse's attorneys of record. Sunhouse disputed this determination, and in accordance with § 44-4839, the liquidator asked the district court for a hearing on the disputed claim. The district court referred the matter to a court-appointed referee and set forth procedures specifying that the hearing would consist of the submission of the liquidator's claim file and other supportive written evidence, along with legal arguments. The referee concluded, "The Hearing Record supports the finding that timely notices were sent to Sunhouse . . . at its business address shown in the records of Amwest." It is unclear from the report to what "business address" the referee was referring. The referee recommended that the class 6 designation be upheld.

Sunhouse took exception to the referee's report, and a hearing was held before the district court, which received into evidence the claim file and several affidavits that had been considered by the referee. The court stated it would accept and approve the

referee's determination if supported by competent, material, and substantive evidence appearing in the record. The district court ultimately found that timely notices were sent to Sunhouse at the 363 Granello Avenue address. In its conclusion, the district court stated that even if Sunhouse were correct that notice was sent only to the attorneys listed in the Amwest file, such notice was sufficient. The district court approved and adopted the referee's report and upheld the liquidator's class 6 designation of Sunhouse's claim. Sunhouse appeals.

## ASSIGNMENT OF ERROR

Sunhouse assigns that the district court erred in approving the liquidator's classification.

## STANDARD OF REVIEW

■ Before addressing the merits of the dispute, we must first determine our standard of review. In this case, whether the liquidation proceedings lie in law or equity is decisive. Although in many contexts the traditional distinctions between law and equity have been abolished, whether an action is one in equity or one at law controls in determining an appellate court's scope of review.[4]

■ Whether a particular action is one at law or in equity is determined by the essential character of a cause of action and the remedy or relief it seeks.[5] We have characterized insurance liquidation proceedings under the prior statutory scheme as judicial in nature and conducted in a court of equity.[6] The equitable character of such proceedings is reflected in the language of the current Act. Its stated purpose is the protection of the interests of the insureds, claimants, creditors, and the public through various means, including "[e]quitable apportionment

---

[4] *Dillon Tire, Inc. v. Fifer*, 256 Neb. 147, 589 N.W.2d 137 (1999).

[5] See *id.*

[6] See, *Clark v. Lincoln Liberty Life Ins. Co.*, 139 Neb. 65, 296 N.W. 449 (1941); *State, ex rel. Good, v. National Old Line Life Ins. Co.*, 129 Neb. 473, 261 N.W. 902 (1935); *State v. Farmers & Merchants Ins. Co.*, 90 Neb. 664, 134 N.W. 284 (1912).

of any unavoidable loss."[7] A liquidation plan submitted for court approval "may prefer the claims of certain insureds and claimants over creditors and interested parties as well as other insureds and claimants, as the director finds to be fair and equitable considering the relative circumstances of such insureds and claimants."[8] The Act further provides for "[e]quitable allocation of disbursements to each of the guaranty associations and foreign guaranty associations entitled thereto."[9] There is no provision in the current Act limiting the scope of appellate review of orders entered by the district court. We conclude that this proceeding under the Act is equitable in nature and, therefore, reviewable de novo on the record.[10]

## ANALYSIS

Sunhouse's primary contention is that the liquidator failed to comply with the Act's notice provisions. Section 44-4822(1)(d) states that the liquidator shall give or cause to be given notice of the liquidation order as soon as possible "[b]y first-class mail to all persons known or reasonably expected to have claims against the insurer, including all policyholders *at their last-known address as indicated by the records of the insurer.*" (Emphasis supplied.) "If notice is given in accordance with [§ 44-4822(4)], the distribution of assets of the insurer . . . shall be conclusive with respect to all claimants whether or not they receive actual notice."[11]

█ We agree with Sunhouse that in a pending liquidation proceeding, when notice is not properly given in accordance with § 44-4822, a claimant should not be penalized for failing to timely file a claim in the liquidation proceeding of which the claimant was unaware. Section 44-4822(2) states that "[n]otice to potential claimants under subsection (1) of this section shall require claimants to file with the liquidator their claims together

---

[7] § 44-4801(4).

[8] § 44-4818(6)(a).

[9] § 44-4834(c).

[10] See *Dillon Tire, Inc. v. Fifer, supra* note 4.

[11] § 44-4822(4).

with proper proofs thereof under section 44-4836 on or before a date the liquidator shall specify in the notice." Although the Act does not specifically set forth the consequences of a failure to provide notice under § 44-4822, it follows that if statutory notice "shall require claimants to file," then lack of notice does not require such filing. This has been the approach taken by other jurisdictions that have considered the effect of a liquidator's failure to comply with the statutory notice requirements of insurance liquidations.[12]

■ We also agree that if the liquidator's file reflects the potential claimant's direct address, then mailing a notice to attorneys listed in correspondence between the claimant and the insurance company from several years previous does not satisfy § 44-4822. The statute specifies that notice must be mailed to the last known address of "all persons known or reasonably expected to have claims" and does not provide that notice can be sent to those persons "or their representatives." If the liquidator, through the records of the company in liquidation, has the direct address of the persons described in § 44-4822, then it is not an onerous requirement to send notice to that address.

Thus, we now consider the record to determine whether the liquidator in this case had Sunhouse's corporate address in Amwest's records. The district court stated that "the last known address of Sunhouse as indicated by the records of Amwest was 'c/o Siegfried, Rivera, Lerner, De La Torre & Sobel.'" This is the law firm, located at 201 Alhambra Circle, Suite 110, Coral Gables, Florida, which Sunhouse states no longer represented it at the time of the notices. Our review of the record shows that Amwest's file contains correspondence from 1997 and 1998 showing the address of the Siegfried, Rivera, Lerner, De La Torre, and Sobel law firm. But, in addition, Amwest's records contain numerous letters of correspondence between Sunhouse and Amwest showing Sunhouse's correct corporate address at 363 Granello Avenue. In fact, the file contains several letters

---

[12] See, *Matter of Transit Cas. Co.*, 79 N.Y.2d 13, 588 N.E.2d 38, 580 N.Y.S.2d 140 (1992); *Middleton v. Imperial Ins. Co.*, 34 Cal. 3d 134, 666 P.2d 1, 193 Cal. Rptr. 144 (1983); *State v. United Physicians Ins. Risk Ret.*, 958 S.W.2d 348 (Tenn. App. 1997).

sent by Amwest to Sunhouse at the Granello Avenue address. We conclude that Sunhouse's "last-known address as indicated by the records of the insurer" was Sunhouse's corporate address at 363 Granello Avenue.[13] The liquidator had an obligation to send notice to that address.

Whether notice was in fact sent by the liquidator to Sunhouse's corporate address is the main point of contention between the parties. We find it helpful to set forth the relevant evidence on this issue in its entirety and in chronological order.

The record shows that in an internal e-mail of Horizon, dated May 5, 2003, a Consolidated employee advised that Sunhouse was disputing proper notice, but that after reviewing the "master mailing list," it was clear that notice was sent to Sunhouse's previous attorney of record. The employee concluded that Sunhouse's claim should be classified as late, because Horizon "did everything we could under the circumstances." The "master mailing list" does not appear in the record.

On June 20, 2003, a letter was sent from Horizon to Sunhouse's current attorney, in response to Sunhouse's objection to its late-filed classification. Horizon again justified the class 6 designation by explaining that notice was sent to Sunhouse's attorneys of record, stating, "If that firm was no longer representing Sunhouse, and chose not to forward the [proof of claim] to its (prior) client or the new attorney of record, that fact was unknown and uncontrollable by Amwest's Liquidator." That same date, an internal note to Horizon's file states that after "reviewing the complete file, and checking in Amwest . . . records . . . notice of liquidation . . . was timely sent to the principal's counsel on record in our file." Correspondence dated May 17, 2004, again recommends that Sunhouse's claim be considered late filed because notice was sent to Sunhouse's counsel, as reflected by the records of Amwest.

It was not until July 2005 that evidence was presented indicating notice for Sunhouse was sent to anyone other than its previous attorneys of record. That evidence consists entirely of the affidavit of Marnell Land. We quote that affidavit in full:

---

[13] See § 44-4822(1)(d).

1. I am an employee of the Special Deputy Liquidator of Amwest Surety Insurance Company ("Amwest"). I have personal knowledge of the matters addressed in this Affidavit. I am a custodian of the records prepared and maintained in the ordinary course of Amwest and Amwest's liquidation from which the information contained in this Affidavit was derived. These records were made at or near the time of the events they record.

2. Part of my duties [is] to investigate the handling of legally required notices and other communications to claimants and other interested parties. I have become familiar with the process that the liquidation has employed in assuring that all Notices of Bond and Policy Cancellation, Notices of Legal Rights (Notices) and Proofs of Claim (POCs) were mailed to the parties, including Amwest policyholders (the "Interested Parties"), who may have an interest in the liquidation of Amwest.

3. I have investigated the POCs and Notices mailed to Interested Parties regarding Bond # 030001648 whose principal is Consolidated Techniques, Inc. and whose obligee is Sunhouse International, Inc. (the "Sunhouse Parties").

4. Between June 21, 2001 and June 28, 2001, a Notice of Cancellation of Bond and Policy Cancellation and a Notice of Legal Rights [were] mailed to the following Sunhouse Parties: Consolidated Techniques, Inc. P.O. Box 823266, South Florida, FL 33082; Sunhouse International, Inc., 363 Granello Avenue, Coral Gables, FL 33146; Collinsworth, Alter, Nielson, Fowler & Dowling, Inc., 5979 NW 151st Street, Suite 105, Miami Lakes, FL 33014. All of said notices were mailed to the last known addresses of the addressees as indicated by the records of Amwest.

5. Between October 19, 2001 and October 23, 2001, POCs were mailed to the following Sunhouse Parties: Consolidated Techniques, Inc. P.O. Box 823266, South Florida, FL 33082; Sunhouse International, Inc., 363 Granello Avenue, Coral Gables, FL 33146; Collinsworth, Alter, Nielson, Fowler & Dowling, Inc. 5979 NW 151st Street, Suite 105, Miami Lakes, FL 33014; Sunhouse Construction, c/o Siegfried Rivera Lerner De La Torre &

Sobel, 201 Alhambra Circle, Suite 110, Coral Gables, FL 33134. All of said notices were mailed to the last known addresses of the addressees as indicated by the records of Amwest.

No exhibits were attached to the affidavit.

At this juncture, we must consider the burden of proof for a disputed claim in liquidation proceedings. The Act is silent on this question. Sunhouse offered affidavits of its vice president and of an attorney whose firm represented Sunhouse in the Florida litigation from January 2002 to January 2005. Both testified that based on their personal knowledge, notice of Amwest's liquidation was not received either by Sunhouse at its corporate address or through its attorneys during the relevant time period.

Sunhouse could not do more to prove that the liquidator failed to send it notice. We have said that even in cases where the party does not have the general burden of proof, the burden to produce evidence will rest upon that party when the party "possesses positive and complete knowledge concerning the existence of facts which the party having that burden is called upon to negative, or where for any reason the evidence to prove a fact is chiefly, if not entirely, within [the party's] control."[14] We conclude that under the circumstances of this case, the burden fell to the liquidator to prove that the notice requirements of § 44-4822 had been met.

Land's 2005 affidavit was the only evidence presented by the liquidator to suggest that notice was mailed to Sunhouse's corporate address. In contrast, several documents from the liquidator's file from 2003 and 2004 reflect that after Sunhouse complained of not receiving notice, Horizon reviewed "the complete file" and determined that notice was sent to the offices of Siegfried, Rivera, Lerner, De La Torre and Sobel. If there was evidence in Amwest's file that notice had also been sent directly to Sunhouse at its corporate address, it is curious that this was not mentioned at that time.

---

[14] *Fitzsimmons v. Gilmore*, 134 Neb. 200, 206, 278 N.W. 262, 265 (1938). See, also, *Central Nat. Bank v. First Nat. Bank*, 115 Neb. 472, 216 N.W. 302 (1927) (applying this principle to bank receiverships).

We are called upon, in our de novo review, to judge the credibility of Land's affidavit. In light of the other evidence presented, we find the affidavit insufficient proof that, in accordance with § 44-4822, notice was sent to Sunhouse's last known address as reflected in Amwest's records. Land asserts that the affidavit is based on personal knowledge, but she does not explain what that knowledge is. Land later states that she is the custodian of the Amwest liquidation records "from which the information contained in this affidavit was derived." If Land's knowledge is based only upon a review of the records, as opposed to having personally witnessed the preparation or mailing of the notices, then the records themselves would be the best evidence of the facts in issue. We have no explanation as to why the relevant portions of the records referred to in the affidavit are not in evidence.

The statement made in Land's affidavit is simply too lacking in specificity and foundation, and was made too late in these proceedings, to contradict Sunhouse's evidence that it did not receive the notice required by law.

## CONCLUSION

Because the liquidator failed to sustain its burden to prove the required statutory notice was sent, we reverse the district court's decision to uphold the late-filed classification.

REVERSED.