# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-3318

_____

William Scott Stuart, Jr., Transferee

*Appellee*

v.

Commissioner of Internal Revenue

*Appellant*

_____

No. 15-3319

_____

Arnold John Walters, Jr., Transferee

*Appellee*

v.

Commissioner of Internal Revenue

*Appellant*

_____

No. 15-3320

_____

Estate of James Stuart Jr., Deceased, Wells Fargo Bank, N.A., Personal
Representative, Transferee

*Appellee*

v.

Commissioner of Internal Revenue

*Appellant*

_____

No. 15-3321

_____

Robert Edwin Joyce, Transferee

*Appellee*

v.

Commissioner of Internal Revenue

*Appellant*

_____

Appeals from United States Tax Court

_____

Submitted: September 20, 2016
Filed: November 14, 2016

_____

Before RILEY, Chief Judge, MURPHY and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

William Scott Stuart, Jr., Arnold John Walters, Jr., the Estate of James Stuart Jr., and Robert Edwin Joyce (collectively, former shareholders) owned stock in Little

Salt Development Company (Little Salt) until 2003. After Little Salt failed to pay its 2003 taxes, the Commissioner of Internal Revenue (IRS) issued notices of transferee liability to the former shareholders. The United States Tax Court concluded that the former shareholders are liable for a portion of Little Salt's tax deficiency. The IRS appeals, and we vacate and remand.

I.

Little Salt is a corporation organized under the laws of the state of Nebraska. For many years Little Salt's primary asset was 160 acres of saline wetland on the outskirts of Lincoln, Nebraska, which Little Salt shareholders used for duck hunting. In 2003 Little Salt sold its land to the city of Lincoln for $472,000. Following the land sale, Little Salt's only significant asset was cash.

While Little Salt was exploring the possibility of selling its land, it received a letter from MidCoast Investments, Inc. (MidCoast). MidCoast offered to purchase Little Salt's stock after the land sale went through for a price equal to all of the cash held by Little Salt, less 64.92% of Little Salt's combined federal and state tax liability for 2003. In other words, the purchase price offered by MidCoast for Little Salt's stock exceeded the amount of money the shareholders would have received if they had liquidated the company and paid the taxes owed for that tax year. Little Salt shareholders accepted MidCoast's offer.

On August 7, 2003 Little Salt followed through on the agreement by wiring $467,721 in cash to a trust account maintained by counsel for MidCoast. MidCoast in turn wired the $358,826 purchase price for the shareholders' stock to their counsel's trust account. Counsel for the shareholders then distributed the purchase price to the shareholders pro rata.

MidCoast subsequently wired the $467,721 it had received in the transaction to an account held in the name of Little Salt at SunTrust Bank, and on the next day $467,000 was transferred from that account to another at the same bank which was entitled "MidCoast Credit Corp. Accounts Payable." Little Salt recorded this transfer as a shareholder loan.

In December 2003 Little Salt filed a corporate tax return that reported taxable income in the amount of $432,148 and tax due in the amount of $148,456. This 2003 return also noted that Little Salt had $278 in cash, an outstanding shareholder loan of $467,000, and no other assets. Little Salt did not include a payment with its return. Then, in 2004 MidCoast sold all of Little Salt's shares to Wilder Capital Holdings, LLC. During that same year, Little Salt reported a bad debt deduction of $450,370. That 2004 bad debt deduction created a net operating loss which Little Salt carried back to its 2003 tax return.

In 2007 the IRS issued a statutory notice of deficiency with respect to Little Salt's 2003 tax return. In the notice, the IRS disallowed the bad debt deduction reported on Little Salt's 2004 tax return and the net operating loss carryback deduction on the 2003 tax return. As a result the IRS assessed taxes of $145,923 against Little Salt as well as an accuracy related penalty of $58,369. After unsuccessfully attempting to collect from Little Salt, the IRS issued notices of transferee liability to its former shareholders under 26 U.S.C. § 6901. The notices explained that the IRS was recasting the 2003 transactions between Little Salt and MidCoast as a liquidating distribution of Little Salt's cash to its shareholders in redemption of their shares, followed by a payment from the shareholders to MidCoast for facilitating the distribution. The shareholders petitioned the Tax Court for review of the notices.

The Tax Court concluded that under the Nebraska Uniform Fraudulent Transfer Act (NUFTA), Neb. Rev. Stat. §§ 36-701 to 36-712, the shareholders were liable for part of Little Salt's 2003 tax debt. The Tax Court rejected the IRS attempt to

-4-

recharacterize the stock sale as a liquidating distribution to the shareholders under federal law, concluding instead that the substantive liability of the shareholders was a matter of state law. The court did not determine whether the stock sale could have been recast as a liquidating distribution under Nebraska law, but decided instead that Little Salt's payment of $467,721 to MidCoast had been a fraudulent transfer and that the shareholders were liable under NUFTA as its beneficiaries. The shareholders' liability for the fraudulent transfer was limited to $58,842, which was the difference between the amount the shareholders received through the stock sale and the amount they would have received if they had instead liquidated Little Salt and paid its taxes. The IRS appeals, arguing the Tax Court erred by failing to consider whether the stock sale should have been recharacterized as a liquidating distribution under Nebraska law and by limiting the extent of the shareholder liability as transfer beneficiaries.

II.

Tax Court decisions are reviewed "in the same manner and to the same extent" as decisions following civil bench trials in federal district courts. 26 U.S.C. § 7482(a)(1). We therefore review the Tax Court's factual findings for clear error and its legal conclusions de novo. Estate of Korby v. Comm'r, 471 F.3d 848, 852 (8th Cir. 2006). The IRS argues that the Tax Court erred by (1) failing to consider whether Little Salt's stock sale should have been recharacterized under state law as a liquidating distribution to the former shareholders, and (2) limiting the liability of the former shareholders as beneficiaries of the transfer from Little Salt to MidCoast. Since these questions concern the proper interpretation of Nebraska law, the Tax Court's conclusions on these points are subject to de novo review.

The IRS issued notices of liability to the former shareholders under § 6901 of the Internal Revenue Code, which permits the IRS as a creditor to collect debts from transferees of debtor property through the same procedure it uses to collect tax

deficiencies. See 26 U.S.C. § 6901. Section 6901 is "purely a procedural statute" that "neither creates nor defines a substantive liability but provides merely a new procedure by which the Government may collect taxes." Comm'r v. Stern, 357 U.S. 39, 42, 44 (1958). The existence and extent of a transferee's substantive liability must therefore be established by another source of law. See McGraw v. Comm'r, 384 F.3d 965, 976 (8th Cir. 2004).

The IRS argued before the Tax Court that analysis of its claim against the former shareholders should proceed in two steps. First, the Tax Court should consider whether the former shareholders were transferees within the meaning of § 6901. According to the IRS, this step would necessarily require the Tax Court to determine whether the stock sale should be recharacterized as a liquidating distribution under federal tax law principles. Second, the Tax Court should assess whether the former shareholders received fraudulent transfers under Nebraska law. The IRS argued that resolution of the second step was dependent upon the outcome of the first step, meaning that the proper characterization of a transaction under federal law would control for purposes of the subsequent analysis of liability under state law.

The Tax Court rejected the IRS view of the proper analysis, instead concluding that the question of substantive liability under state law is wholly independent from the question of whether an individual is a transferee for purposes of § 6901. Although the IRS does not challenge this conclusion on appeal, we note that the Tax Court's conclusion is consistent with every circuit court decision to consider this question to date. See Feldman v. Comm'r, 779 F.3d 448, 458 (7th Cir. 2015); Salus Mundi Found. v. Comm'r, 776 F.3d 1010, 1019–20 (9th Cir. 2014); Diebold Found., Inc. v. Comm'r, 736 F.3d 172, 185 (2d Cir. 2013); Frank Sawyer Trust of May 1992 v. Comm'r, 712 F.3d 597, 605 (1st Cir. 2013); Starnes v. Comm'r, 680 F.3d 417, 429 (4th Cir. 2012).

Although the Tax Court concluded that the question of substantive liability under § 6901 is a question of state law, the court failed to consider the IRS argument that under Nebraska law the stock sale should be recharacterized as a liquidating distribution to the shareholders. The Tax Court instead respected the form of the transaction and concluded that the former shareholders were liable for a portion of Little Salt's tax deficiency as beneficiaries of the transfer from Little Salt to MidCoast. On appeal the IRS argues that the Tax Court's failure to consider whether the stock sale should be recharacterized under state law was error. We agree.

Other courts applying state statutes similar to NUFTA have recognized that "state fraudulent-transfer law is [ ] flexible and looks to equitable principles like substance over form." Feldman, 779 F.3d at 459 (internal quotations omitted); see also Diebold, 736 F.3d at 184–85. Moreover, analysis by the Nebraska Supreme Court has made clear that actions under NUFTA are equitable in nature and that "[e]quity looks through forms to substance." Dillon Tire, Inc. v. Fifer, 589 N.W.2d 137, 141 (Neb. 1999). The Tax Court therefore should have considered the state law recharacterization argument made by the IRS.

Had the Tax Court considered the IRS's state law recharacterization argument and determined that the stock sale should be recast as a liquidating distribution to the shareholders, the outcome of this case could well have been different. The Tax Court's decision to limit the IRS's recovery to $58,842 depends on the shareholders' status as transfer beneficiaries and its conclusion that $58,842 is the amount by which the shareholders benefitted from Little Salt's transfer of its cash to MidCoast. The rationale underlying this measure of recovery would have little application if the Tax Court had concluded that the stock sale should be recharacterized as a liquidating distribution directly to the former shareholders. If the transaction is recharacterized under Nebraska law, the IRS could be entitled to collect the full amount of its claim from the former shareholders. See Neb. Rev. Stat. § 36-709(b); see also Diebold, 736 F.3d at 190.

Although we agree with the IRS that the Tax Court should have considered whether the stock sale should be recharacterized as a liquidating distribution to the shareholders under Nebraska law, we decline its invitation to resolve this question in the first instance. A remand will allow for "adequate vetting through the adversarial process and avoid having the appellate court 'try the action de novo.'" Montin v. Estate of Johnson, 636 F.3d 409, 416 (8th Cir. 2011) (quoting Empire Dist. Elec. Co. v. Rupert, 199 F.2d 941, 945 (8th Cir. 1952)).

Since we conclude that this case should be remanded to the Tax Court for consideration of whether the IRS is entitled to a full recovery from the former shareholders as transferees under Nebraska law, we need not now reach the question of whether the Tax Court erred by limiting the IRS's recovery against the former shareholders as transfer beneficiaries.

Accordingly, we vacate the judgment of the Tax Court and remand to it for further proceedings not inconsistent with this opinion.

_____